CARAWAY, J.
 

 liThe trial court dismissed this tort action against the plaintiffs provider of Medicaid-related services, finding that plaintiffs injury was from an accident arising out of her employment with the defendant, and thus subject to the exclusive remedies under our workers’ compensation law. Plaintiff was injured after work while exiting defendant’s handicapped-accessible van at her home. Finding that defendant’s role as a Medicaid services provider creates material fact issues concerning the transportation services at the time of the accident, we reverse the trial court’s summary judgment dismissal of the action.
 

 Facts
 

 The plaintiff, Ollie M. Brown (hereafter “Brown”), is a disabled person and Medicaid recipient living in Haynesville. Brown received Medicaid-related “home or community-based services” (hereafter “HCBS”) pursuant to a Comprehensive Plan of Care (hereafter “CPOC”) approved by the Louisiana Department of Health and Hospitals Bureau of Community Supports and Services Waiver Unit.
 

 The defendant, Southern Ingenuity, Inc. (hereafter “SI”), is a Louisiana corporation which participates as a provider of HCBS in the state’s waiver program. SI provided services under Medicaid for the assistance of Brown on April 29, 2008, when Brown was allegedly injured in an accident while exiting an SI van.
 

 Brown’s annual CPOC covered the period beginning June 8, 2002, and ending June 7, 2003, and described the level of care and services | ^required “to avoid institutionalization.” A separate “Request for Medical Eligibility Determination” completed by Brown’s mother, Vada Brown, stated that Brown had never been institutionalized, but nevertheless received prior HCBS for developmental disabilities associated with cerebral palsy and mental retardation. Brown’s physical status was described as non-verbal and non-ambulatory, and she required a wheelchair for mobility. Brown’s level of mental retardation and adaptive functioning was “profound,” and she communicated “through pointing and making sounds.”
 

 The adaptive behavior functioning portion of the assessment stated, “Ollie doesn’t participate in any vocational/academic programs at this time, however the provider (Southern Ingenuity) pays Ollie to do their shredding of papers two days a week.” The habilitation goals/needed supports (outcome based) portion of the assessment stated:
 

 COMMUNITY USE: Ollie should continue to enjoy going out into the community to attend various activities. The worker is to accompany Ollie to all activities that she wishes to attend.
 

 LEISURE: Ollie will continue to participate in activities that she enjoys. She will be provided transportation in order to access activities and events in the community.
 

 VOCATIONAL/ACADEMIC: Ollie will not participate in any vocational/academic program at this time. However she should continue to work at Southern Ingenuity two days a week to shred papers.
 

 Yada Brown cared for her daughter in their home in Haynesville. She prepared Brown’s meals and administered her medication. According to the CPOC, Brown required total care to get dressed, help when getting in and out of the bathtub and with personal hygiene, housekeeping help,
 
 *976
 
 and assistance with transportation to and attendance at community activities. | ^Brown’s personal care assistants, Ada Pitts and Julie Easter, were SI employees.
 

 The accident occurred after Brown finished her part-time work and Pitts drove Brown home from Si’s office in Homer. Pitts drove Si’s handicapped accessible van with a wheelchair lift. When they arrived at Brown’s house, the lift no longer worked, so Brown was manually lifted out of the van and allegedly injured.
 

 Pitts’s supervisor, Deborah Shipp, prepared Si’s incident report two days later and described the accident as follows:
 

 After Ollie got off from work Ada loaded Ollie onto the van using the lift with no problems. Upon arrival at home, Ada got Ollie ready to get Ollie out of the van and the lift would not come down. Ada and Vada decided to get Ollie out from the side door. Ada got Ollie on her back and lowered her to the floor of the van. Ollie’s leg got bent under her body and she expressed her pain. Ada changed Ollie’s position to a sitting position and Ada and Vada got Ollie out of the van and onto her chair to the house.
 

 Ollie Brown sued SI, Pitts and Daryn Clark, the president of SI, and Si’s liability insurance carrier on April 29, 2004, for damages, alleging negligence in the operation of the van and Si’s patient care on the date of the accident.
 

 Brown’s petition made a claim for lost wages in addition to other damages. In a discovery dispute over the amount of the claim, Brown’s counsel admitted that Brown was an employee of SI, which was the only place she had ever worked.
 

 Thereafter, SI and the other defendants moved for summary judgment, arguing from Brown’s own admission that she was employed by LSI when she was injured and therefore her exclusive remedy for any tort claim was the Louisiana’s Workers’ Compensation Act, La. R.S. 23:1032,
 
 et seq.
 
 Defendants based their defense on (1) the affidavits of Daryn Clark and Deborah Shipp; (2) Brown’s Response to Defendants’ Interrogatory No. 6 concerning her employment; (3) Si’s employment records consisting of a single time sheet for the pay period from April 28 through May 8, 2003; and (4) Si’s in-house incident report for the accident.
 

 Brown opposed summary judgment on the employment issue, arguing instead that she was a client, not an employee, of SI. She presented the affidavit of Easter, now a former SI employee, who averred that Brown was not an agency employee. Finally, the affidavit of Vada Brown stated that “Ollie just hung around the company and did not work.”
 

 Defendants replied to the opposition with evidence of an EEOC charge of discrimination asserted by Vada Brown for Ollie Brown on April 14, 2004. The charge alleged discrimination based on race, sex and disability, as follows:
 

 THE PARTICULARS ARE
 

 I have been employed by the above-named respondent as a Clerk. On June 10, 2003, I was terminated. The Respondent gave me no reason for this action. I believe I have been discriminated against in violation of the American with Disabilities Act of 1990. I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964 (Title VII).
 

 SI responded to the EEOC charge by a statement of position that provided in part:
 

 • Thereafter, respondent SI created an employment position solely to benefit Ollie Brown. Brown was hired as a paper shredder, part time, for 5 hours per week. Her hourly salary [Bwas
 
 *977
 
 $5.00 per hour, for a total weekly compensation of $25.00 per week.
 

 • In early 2003 a dispute arose between Si’s staff and Ollie Brown’s mother, Vada Brown. Rather than accepting Si’s professional advice concerning staffing for Ollie Brown, Vada Brown insisted that Ollie be staffed essentially by one person, Julie Easter.
 

 • Eventually, the differences between SI and Vada Brown concerning the care of Ollie Brown became irreconcilable. As a result, on June 9, 2003, SI sent Ollie Brown a letter advising Ms. Brown that she was being discharged from all SI programs. This discharge was in complete compliance with all state, federal laws and regulations.
 

 • Subsequent to Ollie Brown’s discharge of Si’s programs Ms. Brown never returned to work at SI. She was not fired, she was not laid off, and she did not give any indication that she quit. Rather, she simply never again appeared at Si’s offices for work.
 

 Si’s letter discharging Brown acknowledged, “[w]e brought vans with lifts to your home to give you greater mobility and independence.... Work, wheelchair lift vans, and massage therapy were all things SI chose to do for you.... ”
 

 The hearing on defendants’ summary judgment motion occurred on March 10, 2008. After argument, the trial court ruled from the bench and granted summary judgment for defendants on the issue of plaintiffs employment and coverage under workers’ compensation. Brown appeals the judgment.
 

 Discussion
 

 Much of the parties’ argument concerns Brown and Si’s involvement under the Medicaid CPOC and whether a true employment relationship existed. Nevertheless, the accident occurred as SI was transporting Brown to her home. There-lore, we choose to focus on the parties’ relationship concerning that transportation, and whether that service was clearly shown |(ias incidental to the disputed employment or merely part of Si’s services provided under the state waiver program.
 

 The employee’s cause of action for workers’ compensation benefits concerns personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031. The employee’s rights and remedies under workers’ compensation law are exclusive of all other rights, remedies and claims for damages. La. R.S. 23:1032.
 

 In
 
 Phillips v. EPCO Carbon Dioxide Products, Inc.,
 
 35,740 (La.App. 2d Cir.2/27/02), 810 So.2d 1171, this court reviewed the Louisiana law concerning accidents arising during the employee’s routine commute to and from work. The court observed:
 

 As a general rule, accidents which occur while an employee is traveling to and from work are not considered as having occurred during the course of employment and are therefore not com-pensable. This rule is premised on the theory that ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. However, this rule has been subject to a number of jurisprudentially established exceptions. For example, these exceptions have arisen:
 

 ⅞ * ⅜
 

 3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses.
 

 Id.
 
 at 1173, citing
 
 Yates v. Naylor Indus. Services, Inc.,
 
 569 So.2d 616, 619 (La.App.
 
 *978
 
 2d Cir.1990),
 
 writ denied,
 
 572 So.2d 92 (La.1991).
 

 On the other hand, apart from the employment issue, the transportation services SI owed to Brown under her CPOC appear to be sufficiently broad so as to encompass transportation to her home when this 17accident occurred. From a review of the federal regulations for the Medicaid HCBS waiver program, we note the following:
 

 42 C.F.R. § 440.180 provides:
 

 (a)Description and requirements for services. “Home or community-based services” means services, not otherwise furnished under the State’s Medicaid plan, that are furnished under a waiver granted under the provisions of Part 441, subpart G of this chapter.
 

 [[Image here]]
 

 (b) Included services. Home or community-based services may include the following services, as they are defined by the agency and approved by CMS:
 

 (1) Case management services.
 

 (2) Homemaker services.
 

 (3) Home health aide services.
 

 (4) Personal care services.
 

 (5) Adult day health services.
 

 (6) Habilitation services.
 

 (7) Respite care services.
 

 (8) Day treatment or other partial hospitalization services, psychosocial rehabilitation services and clinic services (whether or not furnished in a facility) for individuals with chronic mental illness,....
 

 (9) Other services requested by the agency and approved by CMS as cost effective and necessary to avoid institutionalization.
 

 (c) Expanded habilitation services, effective October 1,1997—
 

 (1) General rule. Expanded habilitation services are those services specified in paragraph (c)(2) of this section.
 

 (2) Services included. The agency may include as expanded habilitation services the following services:
 

 (i) Prevocational services, ...
 

 (ii) Educational services, ...
 

 (iii) Supported employment services, which facilitate paid employment, ...
 

 From' this broad description of HCBS and Brown’s specific habilitation goals and needed supports, any transportation of Brown in the community, whether for social or employment-related purposes, was apparently within the scope of Si’s duties as Brown’s Medicaid service provider.
 

 |sThe record before us in this summary judgment setting does not show that SI provided this transportation benefit to Brown as an incident to or inducement for the employment services she performed. The expense of the van, the fuel cost for travel across the parish between Homer and Haynesville, and the cost of Brown's driver/attendant are economically disproportionate to the value of the minimal, part-time service Brown rendered, thus indicating circumstantially that Si’s compensation as a service provider under Medicaid was the cause for its expenditure for the transportation service. While we will base our ruling for reversal of the trial court’s judgment on material fact issues concerning both Si’s compensation and duties under the Medicaid program and the extent and nature of Brown’s services as an alleged employee, it appears unlikely from the record that the transportation services were incidental to any employment agreement.
 

 Conclusion
 

 Accordingly, finding that the exclusive-remedy provision of the workers’ compen
 
 *979
 
 sation law has not been shown as an impediment to this tort action, the summary judgment dismissing the action is reversed. Costs of the appeal are assessed to appellees.
 

 REVERSED.