WILLIAMS, J.
 

 | Claimant, Crystal Posey, individually and on behalf of the minor children, Brooklyn, Bethany and Bailey Posey, appeals a ruling of the workers’ compensation judge granting summary judgment in favor of the defendant, NOMAC Drilling Corporation a/k/a Chesapeake Energy Corporation, and its insurer, Liberty Mutual Insurance Company. For the reasons that follow, we affirm.
 

 FACTS
 

 Jeremy Posey was employed by the defendant, NOMAC Drilling Corporation a/k/a Chesapeake Energy Corporation (“NOMAC”), on a drilling rig located on Barksdale Air Force Base (“BAFB”) in Bossier City, Louisiana. On August 31, 2007, at approximately 5:00 p.m., Mr. Po-sey left the work site in his personal vehicle. Minutes later, as Mr. Posey attempted to negotiate a curve in the road, his vehicle left the roadway, crossed the opposite lane of travel, turned over and landed next to the road. Mr. Posey was pinned beneath the vehicle and was fatally injured.
 

 Mr. Posey’s widow, Crystal Posey, individually and on behalf of her three minor children, filed a disputed claim for compensation seeking to recover workers’ compensation death benefits.
 
 [1]
 
 In response, NOMAC moved for summary judgment, arguing that Mr. Posey’s accident did not “arise out of’ and “in the course of’ his employment. Claimants also moved |2for summary judgment, contending Mr. Po-sey’s accident was compensable under the Workers’ Compensation Act pursuant to the “threshold doctrine.” The district court granted summary judgment in favor of defendants and denied claimants’ motion. This appeal ensued.
 

 DISCUSSION
 

 Claimants contend summary judgment was not appropriate because there was
 
 *1214
 
 conflicting evidence with regard to whether Mr. Posey was still working at the time of the accident. According to claimants, such evidence created a genuine issue of material fact and summary judgment should not have been granted.
 

 In determining whether summary judgment is appropriate, appellate courts are to review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is proper.
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 2004-1459 (La.4/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(2) and (B).
 

 The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all | Sessential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Id.
 
 Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.
 

 When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
 

 Arising Out Of/In the Course Of Employment
 

 An employee is entitled to compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A);
 
 McLin v. Industrial Specialty Contractors, Inc.,
 
 2002-1539 (La.7/2/03), 851 So.2d 1135. The requirement that an employee’s injury occur “in the course of’ employment focuses on the time and place relationship between the injury and the employment.
 
 McLin, supra; Weber v. State,
 
 93-0062 (La.4/11/94), 635 So.2d 188. An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employers’ premises or at other places where employment activities take the employee.
 
 McLin, supra; Mundy v. Dept. of Health and Human Resources,
 
 593 So.2d 346 (La.1992). The requirement that an employee’s injury “arise out of’ the employment relates to the character or origin of the injury suffered by the employee and whether this injury was incidental to the employment.
 
 McLin, supra; Williams v. Regional Transit Authority,
 
 546 So.2d 150 (La.1989).
 

 A workers’ compensation claimant has the burden of proving, by a preponderance of the evidence, that the disability suffered is related to an on-the-job injury.
 
 Modicue v. Graphic Packaging,
 
 44,049 (La.App. 2d Cir.2/25/09), 4 So.3d 968;
 
 Taylor v. Columbian Chemicals,
 
 32,411 (La.App. 2d Cir.10/27/99), 744 So.2d
 
 *1215
 
 704. The question of whether a claimant is entitled to compensation benefits is a question of fact, and a WCJ’s determination may not be disturbed on appeal absent manifest error.
 
 Morrison v. First Baptist Church of West Monroe,
 
 44,189 (La.App. 2d Cir.4/8/09), 7 So.3d 873;
 
 Jones v. Hollywood Casino Shreveport,
 
 42,819 (La.App. 2d Cir.12/5/07), 972 So.2d 1189. Only when documents or objective evidence so contradict the witness’s story, or that story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it, may the appellate court find manifest error.
 
 Taylor, supra; Sistler v. Liberty Mutual Ins. Co.,
 
 558 So.2d 1106 (La.1990).
 

 In the instant case, claimants contend a genuine issue of material fact exists with regard to whether Mr. Posey’s accident arose out of or occurred in the course of his employment with NOMAC. On the disputed claim for compensation form, claimants alleged that Mr. Posey “was killed in a car accident while employed.” During her deposition, Mrs. Posey testified that | ¿several days after the accident, “Moose,” one of Mr. Posey’s co-workers, told her that on the day of the accident, he and Mr. Posey “were suppose[d] to be working an extra 12-hour shift because that — there was [sic] people that didn’t want — that didn’t show up or was [sic] going to be late to the rig, and they didn’t know if they were going to fire them or not.” Mrs. Posey also stated that “Moose” told her that Mr. Posey left “to go get something to eat.”
 

 However, Mrs. Posey’s testimony was not corroborated by the deposition testimony of James Cheshire, also known as “Moose.” Cheshire testified that he had worked with Mr. Posey on the day of the accident. He stated that Mr. Posey had not been spending nights at the crew’s trailer, but he had suggested to Mr. Posey that he do so on the night of the accident because of the marital difficulties that Mr. Posey was having. Cheshire stated, “The next thing I know, at relief time he burned out of there.” Cheshire testified that workers were free to leave whenever their relief showed up, and Mr. Posey’s relief had arrived “pretty close to 5:00, between 4:50 and 5:05, somewhere in there.” Cheshire also testified that Mr. Posey was “going somewhere in a hurry” and Cheshire “figured he’d come back.” Cheshire did not mention any alleged plans to work an additional 12-hour shift with Mr. Posey that evening. In fact, Cheshire testified that he had gotten off work, gone to the trailer and had taken his “shower and stuff’ when he learned about the accident.
 

 Cheshire’s testimony was corroborated by other NOMAC employees. David Poin-dexter worked on the rig with Mr. Posey. Poindexter testified |nthat, although the company records showed that the crew worked from 6:00 a.m. until 6:00 p.m., workers were free to leave the rig whenever the relief crew arrived. He stated that on the day of the accident, they had completed their shift at approximately 5:00 p.m. and had been relieved by the next work crew. He testified that he advised Mr. Posey to spend the night at the crew trailer, but Mr. Posey left the rig when his shift ended, and “to my knowledge, he wasn’t coming back.” Poindexter also testified that Mr. Posey had never spent the night at the crew trailer.
 

 Jonathan Eubank also testified that it was the practice on the rig that the crews relieved each other at 5:00 a.m. and 5:00 p.m., despite the official log-in time of 6:00 a.m. and 6:00 p.m. Eubank testified that Mr. Posey left the rig after his relief person arrived. He stated that Mr. Posey often brought items to prepare to stay at the crew trailer, but “he never stayed, I don’t think.” Eubank also testified that he
 
 *1216
 
 did not speak to Mr. Posey on the day of the accident and did not see him leave, but stated, “If he left, he was done for the day.”
 

 William Brandt testified that he was a member of the crew that relieved Mr. Po-sey’s crew on the day of the accident. Brandt stated that a full work crew had arrived, so there was no need for Mr. Posey to return to the rig. He also testified that he had passed Mr. Posey on the rig and Mr. Posey waved to him and said, “See you in the morning.” Brandt stated that Mr. Posey seemed to be in a hurry when he left because he was “slinging rocks” and “appeared to be leaving pretty quick.”
 

 Several other deposition transcripts were admitted into evidence. [7Eric Holcomb testified that he and Cheshire had told Mr. Posey to stay in the crew trailer on the night of the accident. Holcomb stated that he did not know whether Mr. Posey intended to return to the rig that evening.
 

 Donnie Lollar testified that on the day of the accident, he worked as a member of the crew that relieved Mr. Posey’s crew. He stated that it was the practice of his crew to arrive before 5:00 p.m. to relieve the other crew. Lollar also stated that all three of the floor hands that relieved Mr. Posey had arrived when Mr. Posey left the rig, so there was no need for Mr. Posey to return to the rig. Lollar testified that he spoke to Mr. Posey as he was leaving and Mr. Posey said, “I’ll see you tomorrow.”
 

 Rickey Singletary testified that Mr. Po-sey sometimes brought items to stay at the crew trailer, but he always “ended up leaving though.” He also stated that there was “no way” Mr. Posey would have been required to stay over to work that day because all of the members of the other crew had arrived.
 

 Eric Holcomb testified that he worked with Mr. Posey on the day of the accident. He stated that he saw Mr. Posey leave the rig after the shift ended. Holcomb testified that Mr. Posey “left kind of in a hurry.” Holcomb also testified, “They tried making [Mr. Posey] stay [in the crew trailer] that day, and he told Moose that he would stay, but he ended up, [sic] I guess.” Holcomb further testified that Mr. Posey did not give them any indication that he was planning to return to the rig that day. He stated, “He was in a hurry to get out of there for some reason. He had somewhere to be. I don’t believe he was coming back. He had no belongings there.”
 

 |sChris Hill testified that he arrived at the rig at approximately 5:00 p.m. on the day of the accident. Hill stated that he saw Mr. Posey as he was leaving and Mr. Posey spoke to him and said, “I’ll see you in the morning.” He also stated that Mr. Posey “took off in a hurry,” and he did not know whether Mr. Posey was planning to spend the night in the crew trailer.
 

 Danny Dinkins was also a member of the crew that relieved Mr. Posey’s crew. Dinkins testified that when he arrived back at the rig to relieve Mr. Posey’s crew, Mr. Posey did not talk to him as usual, but left “in a pretty big hurry.” Dinkins further stated that Mr. Posey had never spent the night at the crew trailer.
 

 Claimants, as the adverse parties to NO-MAC’s motion for summary judgment, were required “to produce factual support sufficient to establish” that they will be able to satisfy their evidentiary burden of proof at trial. We find that claimants have failed to do so. There is no evidence-other than Mrs. Posey’s self-serving, uncorroborated hearsay statement-that Mr. Posey left the rig that day “to get something to eat” and was planning to return to work an additional 12-hour shift. Thus, claimants
 
 *1217
 
 have presented no factual support for their contention that Mr. Posey “sustained an injury while actively engaged in the performance of his duties” during work hours.
 

 Threshold Doctrine
 

 Claimants also contend Mr. Posey was in the course of his employment at the time of the accident pursuant to the “threshold rule.” Claimants argue that the district court erred in failing to apply the threshold doctrine and other exceptions to the jurisprudentially created “going-andjcoming”9 rule.
 

 Generally, injuries sustained by an employee while traveling to and from work are not considered to have occurred within the course of employment and, therefore, are not compensable under the Workers’ Compensation Act.
 
 McLin, supra; Brown v. Southern Ingenuity, Inc.,
 
 44,082 (La.App. 2d Cir.2/25/09), 4 So.3d 974. This rule, often referred to as the “going-and-coming rule,” is premised on the theory that, ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work.
 
 McLin, supra; Yates v. Naylor Indus. Services, Inc.,
 
 569 So.2d 616 (La.App. 2d Cir.1990),
 
 writ denied,
 
 572 So.2d 92 (La.1991).
 

 However, the well-established “going-and-coming rule” is subject to the following exceptions recognized by the jurisprudence: (1) if the accident occurred on the employer’s premises; (2) if the employee was deemed to be on a specific mission for the employer; (3) if the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses; (4) if the employee was doing work for his employer under circumstances where the employer’s consent could be fairly implied; (5) if the employee was injured while traveling to and from one work site to another; (6) if the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee (“the threshold doctrine”); or (7) if the operation of a motor vehicle was the performance ofj^one of the duties of the employment of the employee.
 
 L.J. Earnest Const. v. Cox,
 
 30,506 (La.App.2d Cir.5/13/98), 714 So.2d 150;
 
 Yates v. Naylor Indus. Services, Inc.,
 
 569 So.2d 616 (La.App. 2d Cir.1990),
 
 writ denied,
 
 572 So.2d 92 (La.1991). Whether an exception applies is a question of fact.
 
 L.J. Earnest Const., supra.
 

 The “threshold doctrine” generally involves a special risk attributable to the location of the work premises that is different from the risks to which the general traveling public is exposed or that is more aggravated in the area adjacent to the employer’s premises than elsewhere.
 
 Mundy, supra.
 
 Under this doctrine, an employee who meets with an accident not on his or her employment premises while traveling to and from work, can recover if he or she successfully proves that (1) a distinctive travel risk exists for the employee in going to or coming from work, and (2) the risk exists immediately adjacent to his or her place of work.
 
 Robinson v. Brown,
 
 35,430 (La.App. 2d Cir.12/19/01), 803 So.2d 396,
 
 writ denied,
 
 2002-0912 (La.3/22/02), 811 So.2d 924;
 
 Templet v. Intracoastal Truck Line Inc.,
 
 255 La. 193, 230 So.2d 74 (1969).
 

 We first note that the cases claimants rely upon to support their claim that the threshold doctrine applies are distinguishable from the instant case. In
 
 McLin,
 
 the plaintiff was injured in an automobile accident as he was driving home from a mandatory after-hours safety meeting. The Court specifically found that the accident
 
 *1218
 
 occurred during the course of the plaintiffs employment because the plaintiff, in attending a mandatory meeting, conducted away from the premises he routinely worked, was on admission for his employer at the time of the accident. The court also found that the accident “arose out of’ the plaintiffs employment, stating, “An accident arises out of employment if the employee was engaged about his employer’s business and when the conditions of obligations of the employment cause the employee in the course of employment to be at the place of the accident at the time the accident occurred.”
 
 Id.
 
 at 1142.
 

 Claimants’ reliance on
 
 L.J. Earnest Const., supra,
 
 is also misplaced. In that case, the plaintiff was picked up by a coworker and driven from Minden, Louisiana to Texarkana, Arkansas in a company vehicle. The plaintiff and his co-worker were involved in an accident on their way back to Minden. The court concluded that the “accident, though occurring on the way home from work, was sufficiently connected to the employment that it arose out of and in the course of the employment.”
 
 Id.
 
 at 153.
 

 In this case, our review of the record revealed no evidence to indicate that Mr. Posey was on a mission for NOMAC at the time of the accident. In fact, the evidence shows that Mr. Posey had completed his shift and had left the rig for the day when he was killed. Mr. Posey was driving his personal vehicle at the time of the accident and was not on a mission or returning from a mission for NOMAC at the time of the accident. The testimony was also un-refuted that, although NOMAC paid its employees a per diem, the employees were not reimbursed for travel expenses. Therefore, we find no merit to the claim that Mr. Posey’s accident arose out of or in the course of his employment.
 

 Claimants also argue that this case fits under the threshold doctrine 112for the following reasons: (1) NOMAC employees were forced to travel a road that was in “very poor condition;” (2) the condition of the road contributed to the accident; (3) the road was the only ingress and egress to and from the drilling rig; (4) the accident occurred on property adjacent to and “very close to” the rig.
 

 In
 
 Mundy, supra,
 
 the seminal case with regard to the threshold doctrine, the plaintiff was stabbed in an elevator at her workplace. The plaintiff sued her employer in tort, and the employer defended the suit, arguing that workers’ compensation was the plaintiffs exclusive remedy. The court held that the threshold doctrine was not applicable, stating, “Even if the risk which gave rise to the injury could be considered as a defect hazardous to travelers immediately adjacent to the employer’s premises, the risk was no more dangerous in the immediate vicinity of the employer’s premises than elsewhere along her route of travel to work.”
 
 Id.,
 
 at 351.
 

 In
 
 Washington v. Avondale Industries, Inc.,
 
 98-0362 (La.App. 4th Cir.3/18/98), 708 So.2d 1254, an employee caused an accident when she exited her employer’s plant and turned onto the highway. The employer was named as one of the defendants in a subsequent lawsuit. The court rejected the plaintiffs’ argument that the threshold doctrine applied, stating:
 

 On the day of the accident, [the employee] had clocked out at 3:00 p.m. The accident occurred as she exited the Avondale plant and turned onto Highway 18. [The employee] further stated that she was driving her own vehicle and was on her way home when the accident occurred. The facts established by all parties reveal that the accident occurred after [the employee] completed her work day at Avondale. The
 
 *1219
 
 accident occurred as she was going home. Further, the facts support Avon-dale’s argument that the accident is not covered by any of the | lsexceptions to the general rule that an employee who is traveling from work to home is not within the course and scope of his employment. Avondale did not provide her with transportation home or pay her wages and expenses in connection with her travel time. Further, [the employee’s] operation of her vehicle to go home had no relationship to her employment responsibilities. [The employee] was employed as a welder by Avondale at its plant. Her job responsibilities did not include any travel requirements.
 

 Id.,
 
 at 1257.
 

 In
 
 Kennedy v. Martin Gas Transp. Co., Inc.,
 
 96-100 (La.App. 3d Cir.8/21/96), 680 So.2d 1195,
 
 writ denied,
 
 96-2838 (La.1/24/97), 686 So.2d 860, the claimant was involved in an automobile accident approximately forty-five minutes after he had completed a mission for his employer. At the time of the accident, the claimant was en route home in his personal vehicle. The court concluded that the claimant was not in the course and scope of his employment at the time of the accident, stating:
 

 [The claimant] was not furnished transportation to travel to and from the areas where he picked up the eighteen wheeler he drove to transport products. The company did not reimburse [the claimant] for travel expenses; nor was [the claimant] transporting tools, equipment, or other things to be used in performing the job. [The claimant] would simply drive his own vehicle to the location where the eighteen wheeler was parked, park his vehicle, get into the company truck, make the designated run, return the truck to a specific designated area; then he would get back into his own vehicle and drive himself back to his home.... [T]he reality was that [the claimant] was traveling from work at his own expense and this Court believes his employment relationship was suspended from the time he left the eighteen wheeler in route to his home until he would resume his work at some other time.
 

 Id.,
 
 at 1200.
 

 Perhaps more analogous to the instant case is
 
 Templet, supra.
 
 In [
 
 uTemplet,
 
 the claimant sustained injuries in an automobile accident as he attempted to turn onto his employer’s premises as he arrived at work. The claimant argued that the accident arose in the course and scope of his employment because his vehicle was partially on his employer’s premises when he was struck. In the alternative, the claimant argued that the threshold doctrine applied because the accident occurred on the highway leading to his employer’s premises. He contended the highway was the route for his ingress and egress to and from his employer’s premises, and he was subjected to a greater travel risk than that of the general public. The supreme court concluded that the accident did not occur on the employer’s premises because the vehicle was struck while it still was on the highway. The court also rejected the claimant’s argument with regard to the applicability of the threshold doctrine, stating:
 

 The facts presented in this case do not show any special risk the defendant company’s employees must assume in turning off the public road to enter the employer’s premises which would not be encountered by the general public in turning off such road or other roads similarly situated. Accordingly, there was no ‘unusual’, ‘peculiar’ or ‘greater’ hazard to the employees of the defendant company than that faced by any other motorist using the public streets.
 
 *1220
 
 We hold that a claim for injuries occurring on a road or highway, as presented here, is not compensable. There must be a hazard such as railroad tracks, tunnels, covered wharves and the like[,] to which the employee is regularly and peculiarly exposed by reason of his em-plojunent to which the public generally, albeit also subjected to such hazard, is not usually exposed to the extent of the employee.
 

 Id.,
 
 at 230 So.2d at 80-81.
 

 | ]SIn the instant case, the evidence established that the accident occurred soon after Mr. Posey completed his shift and left the rig in his personal vehicle. The accident took place a short distance from NOMAC’s rig structure, and approximately one-quarter of a mile before Mr. Posey reached the gate to exit BAFB. Several NOMAC employees testified that the road on which Mr. Posey was traveling at the time of the accident was the most direct route to and from the drilling
 
 rig. The
 
 employees stated that the road was in poor condition and contained sharp curves.
 

 We find that the record herein does not reveal that NOMAC’s employees encountered any special risk in traveling East Boundary Road. Even if the road was indeed hazardous, there is nothing in the record that persuades us that the risk in traveling the road was either unusual, peculiar or greater to Mr. Posey than the risk faced by any other motorist using East Boundary Road. Therefore, we find that the threshold doctrine does not apply under the facts of this case.
 

 CONCLUSION
 

 For the reasons set forth herein, we affirm the district court’s ruling granting summary judgment in favor of defendants, NOMAC Drilling Corporation a/k/a Chesapeake Energy Corporation and Liberty Mutual Insurance Company. Costs of this appeal are assessed to claimants, Crystal Posey, individually and on behalf of the minor children, Brooklyn, Bethany and Bailey Posey.
 

 AFFIRMED.
 

 [1]
 

 . We must note that much of the testimony centered around the tumultuous state of the Poseys' marriage. Mrs. Posey testified that she and Mr. Posey had been experiencing marital difficulties and had been living apart since he began his employment with NOMAC. She stated that she had obtained a restraining order against Mr. Posey due to "domestic abuse” and had not seen him in several days. Mrs. Posey also testified that she learned of her husband’s death from her parents, who had heard about it from other people.