HALL, Judge.
Oswald W. Viosca and his two daughters, viz., Mrs. Lynn Viosca Brignac and Mrs. Joan Viosca Gamble, issue of his marriage with Mrs. Armand Scully Viosca, brought suit under LSA-C.C. Art. 2315 to recover damages for the injury to, and subsequent death of Mrs. Viosca, who fell while visiting in the ■ hospital room of her husband, who was a patient in Touro Infirmary. The defendants are Touro Infirmary and its general liability insurer.
Following trial on the merits judgment ■was rendered in favor of plaintiffs and against defendants in solido in the following amounts:
Mr. Viosca (husband) $20,000.00 plus $2,022.73 hospital and medical expenses of Mrs. Viosca
Mrs. Brignac (daughter) $7,500.00
Mrs. Gamble (daughter) $7,500.00.
Defendants appealed. Plaintiffs did not answer the appeal.
The theory of plaintiffs’ action is that an employee of Touro moved the over-bed table away from Mr. Viosca’s bed, and negligently placed it directly in front of the lounge chair in which Mrs. Viosca was sleeping, and when Mrs. Viosca later awakened and arose she stumbled or tripped on the legs or a portion of the table and fell, causing severe injuries to her from which she later died.
Defendants contend that the placing of the table in front of Mrs. Viosca was neither a negligent act, nor was it the proximate cause of the accident. They further urge negligence on the part of Mrs. Viosca barring recovery. Defendants contend in the alternative that Mr. Viosca cannot recover because of his negligence in failing to inform his wife of the presence of the table, and, in the further alternative, that each of the awards is excessive.
In addition to the medical witnesses, the proof on behalf of plaintiffs consists of the testimony of Mr. Viosca and his daughter, Mrs. Gamble. Mr. Viosca was the only living eye witness to the accident. Defendants produced the only two available Touro employees who were on duty at the. time but neither of them had any knowledge of the matter at hand.
Mr. Oswald Viosca, plaintiff, was entered in Touro Infirmary for treatment on Saturday, June 16, 1962. His wife, Mrs. Armand Scully Viosca, came to visit him after mass on Sunday morning, June 17, 1962 and remained in the hospital with her husband throughout the day. Her daugh *224 ter, Mrs. Gamble, who was also Mr. Vios-ca’s legal secretary, arrived about 4:30 in the afternoon and commenced taking dictation from Mr. Viosca in connection with a considerable number of legal files. Mrs. Gamble sat on the foot of the bed using the over-bed table for a desk while Mr. Viosca •dictated to her from a reclining position in the bed.
Around 6 o’clock Mrs. Viosca and her daughter went to supper and upon their return shortly thereafter Mrs. Viosca made herself comfortable in the lounge chair while Mrs. Gamble resumed her secretarial duties sitting on the foot of the bed and using the over-bed table for a desk.
About 9 P.M. Mrs. Gamble got up to go home. At this time Mrs. Viosca was sound asleep in the lounge chair and did not awaken when her daughter kissed her goodnight.
Shortly afterwards Mr. Viosca rang for ■someone to come move the over-bed table, which was across his knees and had become uncomfortable. A nurse’s aid came •and at his request removed the table from •over the bed. Mr. Viosca was lying on his right side examining some files at the time with his back towards the nurse’s aid and •did not notice where the table was moved.
Mr. Viosca heard his wife snoring loudly in the lounge chair and without looking axp from his reading called to her suggesting that she go home. He was still lying •on his right side with his back to her chair. He heard her start to rise and simultaneously turned over facing her expecting a good■night kiss. At that very moment he saw 'her in the act of arising, and noticed that the over-bed table was directly in front of Tier with its edge touching or almost touching her dress. When Mrs. Viosca got almost erect she fell forward over the table to the floor receiving severe injuries including a broken hip. The whole thing happened in a split second. Mr. Viosca ■said he did not see her take a forward step ■and the exact mechanics of how she came to fall is unknown. Her feet and legs were not within his view and there is no affirmative testimony showing exactly how she tripped or stumbled. All that Mr. Viosca knew is that the over-bed table had been placed directly in front of and almost touching Mrs. Viosca as she slept in the chair and that in the act of arising from the chair she fell over the table.
Mrs. Viosca was taken to the emergency room of the hospital where it was found that she had suffered a broken hip and other injuries. She was hospitalized and received treatment for her injuries from June 17 to June 25, the treatment consisting in part of an open reduction of her fractured hip. On June 25th Mrs. Viosca lapsed into a coma. A neuro-surgeon who was called in consultation thought that she was suffering from a subdural hematoma and confirmed his diagnosis by making a spinal tap. Thereafter he performed a trephining operation on Mrs. Viosca’s skull but she died on June 29th without ever having regained consciousness.
The record is clear that the cause of death was a left subdural hematoma and further that the hematoma was caused by Mrs. Viosca’s fall on June 17th.
The doctrine of immunity of charitable institutions is not applicable to visitors who come to see patients in the hospital. Visitors to patients are held to be invitees of the hospital and the hospital owes them the duty of exercising reasonable care for their safety. See Lusk v. United States Fidelity Guaranty Co., La. App., 199 So. 666; Alexander v. General Accident Fire and Life Assurance Corp., La.App., 98 So.2d 730; See also Annotation in 71 A.L.R.2d 436, 438.
The testimony shows that the over-bed table, when not in use by 'the patient, is customarily kept near the foot of the bed on the opposite side of the room from where Mrs. Viosca was sitting. In our opinion the act of the nurse’s aid in moving the over-bed table from its accustomed position across the room and placing it im *225 mediately in front of and almost pressing against Mrs. Viosca who was obviously in a sound sleep and would not expect it to be there was clearly negligent.
The defendants lay great stress on the fact that Mr. Viosca did not see his wife take a step nor did he see her trip or stumble but observed only that as she came erect she fell forward across the table, and contend that the table did not cause the fall. Defendants suggest that possibly Mrs. Vi-osca had a spell of weakness which caused her to fall, and show that she had consulted her personal physician on April 30, 1962 with complaints of nervousness, over-work and swelling of the feet and that he gave her prescriptions for nervousness in the form of Librium and Equanil. Defendants also point out that her case history taken by a medical student after the fall, which was admitted by stipulation, reads in part: “Migraine headache 3 days prior to accident. Weakness for 3 days prior to accident.”
However, there is not an iota of evidence that Mrs. Viosca ever suffered dizziness or that she ever passed out or fainted because of any weak spell. There is no evidence that she was weak at the time of the accident or that she stumbled or fell from weakness at any time. There is no reference in her case history that weakness caused her fall. On the contrary the case history contained the following notation: “The patient states that while visiting her husband she tripped and fell on her left hip.”
We are of the opinion that although Mr. Viosca could not see his wife’s legs and feet and consequently could not say exactly how she came to fall, the most logical conclusion from the testimony is that she fell because of the table.
We agree with the Trial Court’s finding that Mrs. Viosca was not contribu-torily negligent. She arose from a deep sleep and could not be expected to be as alert as would be expected if she had been awake. Moreover, it would be unreasonable to assume that she should have expected the table to be moved from its customary place to a position immediately in front of her while she slept.
We cannot agree with defendants’ contention that Mr. Viosca was contribu-torily .negligent in not warning his wife of the presence of the over-bed table. He did not know where the table was until he turned over and saw his wife falling over it.
We find no reason to disturb the quantum in this case. The Trial Judge has wide discretion in the assessment of damages and we cannot say that he has abused it. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149. See also Parker v. Smith, La.App., 147 So.2d 407.
The cause of action was both for survival of Mrs. Viosca’s tort claim and for her wrongful death. Mrs. Viosca suffered a broken hip and went through severe pain from June 17th to June 25th when she went into a coma. Before going into the coma she underwent a major operation on her hip and suffered with severe headaches.
Mr. Viosca was 47 years of age at the time of his wife’s death. She was 46. They had been married for 24 years. While the marriage had experienced difficulties for some months prior to her hysterectomy in October 1960 they had become reconciled over a year and were very close thereafter. She not only was a wife to him but since he had a foot condition that prevented his driving she became his chauffeur. He was very dependent upon her.
The married daughters of the decedent likewise have a very substantial claim for the loss of love and affection as a result of the death of their mother. Both of them were very close to their mother, telephoned her daily and visited her weekly. They have lost the love and counsel of a mother in their early years of married *226 life at a time when they need their mother greatly.
For the foregoing reasons the judgment appealed from is affirmed; costs of both Courts to be borne by appellants.
Affirmed.