STEWART, J.
liPro se plaintiff Vera Cavet-Vanderpool (“Vanderpool”) appeals a summary judgment rendered in favor of Louisiana Extended Care Hospital of West Monroe (hereafter referred to as “the hospital”), the remaining defendant of several named by Vanderpool in this litigation. The summary judgment dismisses all Vanderpool’s claims arising from a commode chair incident. We have thoroughly reviewed this 16-volume record of over 3,300 pages and conducted a de novo review of the summary judgment. We find there to be no genuine issue of material fact and that the hospital is entitled to judgment as a matter of law. Accordingly, we affirm.
FACTS
Vanderpool filed a suit for damages against the hospital and other unnamed defendants[1] on July 23, 2007. The suit arose from two incidents at the hospital where Vanderpool’s mother, Bobbie Jean Cavet (“Cavet”), was a patient from June 23, 2006, until July 26, 2006.[2] The first incident, which is not at issue in this appeal, occurred when Cavet slipped off her bed on July 21, 2006. The second incident, which is at issue, is alleged to have occurred on the morning of July 23, 2006, when the drop arm of a bedside 12commode chair gave way under Cavet’s weight causing her to fall forward into Vanderpool. Both women then fell against a door and slid to the floor.
Granted the privilege of litigating without payment of costs as provided by La. C.C.P. arts. 5181, et seq., Vanderpool asserted numerous allegations against the hospital through her petition and revised and amended complaints.[3] In summary, she asserted that the hospital:
• knew or should have known there was a problem with the commode chair and failed to do anything about it;
• failed to provide a commode chair suitable for Cavet’s weight;
• failed to properly maintain the commode chair or to provide one that was safe and in good working order;
• failed to provide a demonstration or instructions on use of the commode chair;
• failed to train its employees on proper use and maintenance of the commode chair;
• failed to provide a warning or recall after the incident; and
*1125 • failed to conduct routine inspections of the commode chair or to implement a regular procedure for checking the locking mechanism on the chair arm before each use.
Additionally, Vanderpool alleged “possible” violations of safety standards by the hospital’s nursing staff. She also complained that the nursing staff failed to assess her injuries after the incident. She asserted that she had a history of “mini-strokes,” and that she “should have been given TPA within | sthree hours to minimize potential damage from ischemia.” There is no indication in the record of Vanderpool having had a stroke just before, at the time of, or after the alleged incident.
Answering, the hospital denied Vander-pool’s various allegations. On January 7, 2010, the hospital filed a motion for summary judgment. The hospital asserted that there is no genuine issue of material fact in dispute and that Vanderpool cannot prove that the alleged incident occurred, that it owed any duty to her under the particular facts of this case, that it breached any duty to her, or that the commode chair had any vice or defect.
At the hearing on April 9, 2010, the hospital introduced 12 exhibits into evidence to support its motion. These included Vanderpool’s original pleadings, a copy of her proposed evidence and witness list, and discovery responses by the hospital. In responding to discovery, the hospital denied having any affidavit or accident report by its former nursing director, Dee Dee Cook, about the commode chair incident; Vanderpool had claimed that she reported the incident to Cook a day or two after it happened. The hospital introduced two invoices for the purchase of 18 commode chairs and a copy of the instructions and warranty for the type of commode chair, the Lumex 6438, that had been used by Cavet. With the invoices was an affidavit by Darlene Lachney, Director of Nursing, who reviewed equipment order invoices and verified that the hospital has had since 2005 the same 18 commode chairs, nine of model 6438 and nine of model 6433, in service and has not had to dispose of, service, or replace any of the 18 chairs since that time. The hospital also introduced the summary judgment 14rendered in favor of GF Health Products, Inc., the manufacturer of the Lumex 6438, dismissing Vanderpool’s products liability claims.
The hospital introduced affidavits by individuals who were involved in Cavet’s care and attested to having no recollection of the alleged incident. Jennifer Pauley, a physical therapist, recalled Cavet as a patient at the hospital but had no knowledge of and found no information in Cavet’s chart regarding a fall from a commode chair. Nurses Karen Baldwin, Rhonda Dalton, and Fran Johnson also had no recollection of any incident involving Cavet falling from a commode chair and attested that sueh an event would be documented in the patient’s chart.
Finally, the hospital introduced Vander-pool’s deposition taken on September 23, 2008. According to the deposition, a nurse’s aide came into Cavet’s room in the morning to assist her in using the bathroom. Vanderpool assisted the aide in transferring Cavet from her bed to the commode chair. Vanderpool explained that the aide said, “Well, when you get through, call me. I’ll come in, clean her up, if need be, and get her back in bed.” After telling the aide that she would clean her mother, Vanderpool said, “[B]ut I’ll give you a ring to assist to get her back in bed.” Vanderpool then explained the incident:
And then I guess [Cavet] must have told me she was through, and I was standing right there in front of her. And about that time she raised up, and then the *1126 right arm just totally gave way, and she fell right into me, and I grabbed her and tried to hold her, but I couldn’t. Her weight, she was heavy, and she slipped down my arms ... next thing I know, we’re into the bathroom door, and my head hit the bathroom door, and we slid down onto the floor.
| ¡jVanderpool stated that she crawled to the bed to ring for help, that six nurses came to the room, and that a Hoyer lift was used to get Cavet back into bed. Sometime later, the commode chair was removed from the room and replaced with a different one. Though Vanderpool claimed to have sustained injuries, she admitted that she did not see a doctor until over a year later after she filed this suit.
In opposition to summary judgment, Vanderpool introduced her original filings and the warranty for the Lumex 6438, all of which had been introduced by the hospital. She also introduced a discovery document concerning questions she wished to pose to Keith Myers, C.E.O. of the hospital’s parent company, who had by this time been dismissed from the suit on a summary judgment and who had no involvement in the incident at issue. Finally, she offered another discovery-related document concerning interrogatories for the hospital on a variety of issues, most of which appear wholly unrelated to the commode chair incident.
The trial court indicated that it would accept Vanderpool’s version of what occurred as true for purposes of determining whether summary judgment should be granted. The trial court’s primary focus was whether the hospital owed Vanderpool any duty under the facts as she stated them.
On June 30, 2010, the trial court granted summary judgment in favor of the hospital. In a footnote, the trial court explained that its ruling pertained to Vanderpool’s claim that her injuries were caused by a defective commode chair in the hospital’s custody or control. Vanderpool did not believe the summary judgment dismissed her negligence claims and sought |sto file more pleadings against the hospital concerning the commode chair incident. The trial court conducted another hearing on January 28, 2011, to address whether Van-derpool should be permitted to file the additional pleadings and whether to reconsider the summary judgment. Vanderpool introduced a second deposition given by her and photographs taken around the time of the incident. These purport to show the commode chair involved in the incident and other allegedly broken commode chairs at the hospital.
The trial court rendered an amended and supplemental judgment on May 9, 2011, denying Vanderpool leave to file the additional pleadings and confirming the previously granted summary judgment in favor of the hospital. In a footnote, the trial court explained that it had “inadvertently failed to address the request for summary judgment on behalf of [the hospital] with respect to the claims of negligence ... and does so at this time by means of this amended and supplemental judgment.”
Vanderpool objected to the ruling and filed an appeal motion. On July 27, 2011, the trial court issued written reasons designating the original and supplemental summary judgments appealable pursuant to La. C.C.P. art. 1915 and explaining that the summary judgment disposes of all the substantive liability claims advanced by Vanderpool against the hospital. Only her ancillary claims regarding Cavet’s settlement with the hospital remain unresolved.
DISCUSSION
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of *1127 actions. La. C.CjP.7 art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Jenkins v. Willis Knighton Medical Center, 43,254 (La.App.2d Cir.6/4/08), 986 So.2d 247, writ not considered, 2008-1507 (La.10/10/08), 993 So.2d 1273.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material if its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Amos v. Crouch, 46,456 (La.App.2d Cir.6/29/11), 71 So.3d 1053.
The moving party bears the burden of proof. However, when the moving party will not bear the burden of proof at trial on the matter before the court on summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim but need only point out that there is an absence of factual support for one or more essential elements of the adverse party’s claim. La. C.C.P. art. 966(C)(2). When a motion for summary judgment is properly made and supported, the adverse party may not rest on the mere allegations or denials of his pleading, but he must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). This requires the plaintiff to make a positive showing of evidence creating a genuine issue as to an essential element of her claim; |smere speculation is not sufficient. Babin v. Winn-Dixie Louisiana, Inc., 00-0078 (La.6/30/00), 764 So.2d 37; Klein v. Cisco-Eagle, Inc., 37,398 (La.App.2d Cir.9/24/03), 855 So.2d 844. If the adverse party fails to produce the required factual support to show that she will be able to meet her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Russell v. Eye Associates of Northeast Louisiana, 46,525 (La.App.2d Cir.9/21/11), 74 So.3d 230.
In moving for summary judgment, the hospital asserted that Vanderpool would be unable to meet the burden of proving that it owed any duty to her under the facts alleged, that it breached any duty owed to her, that the commode chair was defective, that it had any actual or constructive knowledge of the any defect, or that the alleged event even occurred. Vanderpool’s theory of recovery was based on the negligence of the hospital through its nursing staff and the liability of the hospital as owner and custodian of the commode chair. We will look to the applicable substantive laws to determine whether there is a genuine issue of material fact under either theory of recovery.
Negligence claims are subject to the duty-risk analysis. Under the duty-risk analysis, the plaintiff must prove that (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant breached that duty; (3) the defendant’s conduct was cause-in-fact of the plaintiffs injuries; (4) the defendant’s conduct was the legal cause of the plaintiffs injury; and (5) actual damages. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270; Ebarb v. Matlock, 46,243 (La.App.2d Cir.5/18/11), 69 So.3d 516, writ denied, 2011-1272 (La.9/23/11), 69 So.3d 1164.
The trial court viewed the existence of a duty as the pertinent inquiry in determining whether the hospital was entitled to summary judgment. So, we will begin with determining the duty, if any, owed by the hospital to Vanderpool under the circumstances of this case and whether there *1128 is any issue of material fact as to whether the hospital breached such duty.
The existence of a duty presents a question of law. Ebarb, supra. We ask whether there is any law — whether statutory, jurisprudential, or arising from general principles of fault — to support the plaintiffs claim. Id. Deciding whether to impose a duty requires the court to make a policy decision in light of the unique facts and circumstances of each case. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Randall v. Chalmette Medical Center, Inc., 2001-0871 (La.App.4th Cir.5/22/02), 819 So.2d 1129. The ease of association between the duty owed and the risk encountered by the plaintiff is the focus of inquiry in finding whether a duty exists in a particular case. Socorro, supra. A finding that the defendant owes no duty to the plaintiff in a given case is grounds which support a summary judgment in favor of the defendant. Klein, supra.
Vanderpool was a visitor to the hospital. A hospital owes a duty to visitors to exercise reasonable care for their safety commensurate with the particular circumstances involved. Reynolds v. St. Francis Medical Center, 597 So.2d 1121 (La.App. 2d Cir.1992). This duty has been typically |10appiied in slip-and-fall cases. See Holden v. Louisiana State University Medical Center in Shreveport, 29,268 (La.App.2d Cir.2/28/97), 690 So.2d 958, writ denied, 97-0797 (La.5/1/97), 693 So.2d 730; Reynolds, supra; Terrence v. Baton Rouge General Medical Center, 2010-0011 (La.App.lst Cir.6/11/10), 39 So.3d 842, writ denied, 2010-1624 (La.10/8/10), 46 So.3d 1271; Mosley v. Methodist Health System Foundation, Inc., 1999-3116 (La.App.4th Cir.11/15/00), 776 So.2d 21, writ denied, 2001-0597 (La.4/27/01), 791 So.2d 633; Blount v. East Jefferson General Hosp., 04-407 (La.App.5th Cir.10/12/04), 887 So.2d 535. In Viosca v. Touro Infirmary, 170 So.2d 222 (La.App. 4th Cir.1964), app. denied, 247 La. 416, 171 So.2d 668 (La.1965), the court found that the defendant breached this duty when a nurse’s aid moved an over-bed table directly in front of and almost touching the plaintiff, a visitor who was sleeping in a chair. The plaintiff somehow tripped over the table when she awoke and sustained significant injuries.
The issue here is whether there is an ease of association between the duty the hospital owed Vanderpool, a visitor, and the particular risk she encountered. It is clear that the hospital would have owed a duty to Cavet, its patient, to protect her from any risk of harm in transferring on and off the commode chair.[4] In fact, the various “counts” asserted by the plaintiff against the hospital pertain to actions the hospital could have taken to protect Cavet. A hospital would be expected to maintain a commode chair |nin safe working order, provide one suitable for the patient’s weight, instruct on usage, conduct routine inspections, and comply with safety standards all for the protection of and the fulfillment of its duty toward its patient. But a hospital would not be expected to do these things for the safety of visitors, who would not be the intended users of commode chairs provided by hospitals for patient care. The hospital’s duty to exercise reasonable care for the safety of visitors would not encompass the unlikely risk that a visitor would sustain an injury in connection with a patient using a commode chair. This is not a situation as in Viosca, supra, *1129 where a hospital employee moved something directly into the plaintiffs path and caused her injury.
In Pratt v. Lifemark Corp., 531 So.2d 488 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1214 (La.1989), the court found that the defendant did not owe a surgeon, who injured his back while moving a heavy patient, any duty to provide sufficient personnel to assist in the transfer. The court found that the surgeon was not obligated to move the patient; he volunteered to do so. Moreover, the duty to have sufficient personnel on hand was for the patient’s safety, not for protecting against the remote possibility that the surgeon would injure his back.
According to Vanderpool’s deposition, the nurse’s aide assisted Cavet in transferring onto the commode chair and instructed that she call her for assistance when done. Instead, Vanderpool volunteered that she would clean her mother then ring for the aide to get Cavet to bed. Vander-pool has not asserted that she was required by the hospital to assist with Cavet; instead, her efforts were voluntary and done out of love for her mother. Her 1 ^desire to help her mother is commendable. However, there is no ease of association between the duty owed by a hospital to visitors and the risk that Vanderpool would sustain some injury when she was unable to support Cavet, who weighed in the area of 250 pounds, after the drop arm of the commode chair “gave way” when Cavet suddenly raised up. We do not find that the hospital owed a duty to Vander-pool to protect her from any risk of injury under the facts alleged. Nor do we find any breach by the hospital of its duty to exercise reasonable care for the safety of its visitors commensurate with the particular circumstances alleged. On these grounds, summary judgment is appropriate as to all Vanderpool’s negligence claims against the hospital.
We now turn to Vanderpool’s claims against the hospital as the owner and custodian of the commode chair. La. C.C. art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
A defect under La. C.C. art. 2317.1 is a condition or imperfection that poses an unreasonable risk of injury to persons exercising ordinary care and prudence. Nicholson v. Horseshoe Entertainment, 46,-081 (La.App.2d Cir.3/2/11), 58 So.3d 565, writ denied, 2011-0679 (La.5/20/11), 63 So.3d 980. Vice and defect are synonymous terms. The terms vice, defect, and ruin describe a thing’s unreasonably dangerous character. Myers v. Dronet, 2001-5 (La.App.3d Cir.6/22/01), 801 So.2d 1097, citing Frank L. Maraist & Thomas C. Galligan, Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul. L.Rev. 339 (1996).
The warranty information and instructions for the Lumex 6438 commode chair were introduced into evidence by both parties. According to these exhibits, the commode chair was designed for a maximum user weight of 400 pounds; thus, it was suitable for Cavet’s size. The commode chair also has drop arms. The instructions state, “To drop arm, push release lever in or pull button out to release arm.” The hospital introduced sales invoices for the purchase of 18 commode chairs, nine in 2004 and nine in 2005. Darlene Lachney, its Director of Nursing, attested that the hospital has had the 18 commode chairs in *1130 use and has never had to dispose of, repair, or replace these chairs or purchase new ones.
By the exhibits introduced at the summary judgment hearing, the hospital showed that Vanderpool would be unable to prove that there was some ruin, vice, or defect in the commode chair. In response to the hospital’s properly made and supported motion for summary judgment, Vanderpool did not produce any evidence to show that she would be able to prove that there was some defect in the commode chair. Photographs introduced by her show commode chairs with arms down. Because the commode chair was designed with drop arms, these photographs do not tend to prove a ruin, vice, or defect. Moreover, the exact commode chair involved in the incident could not be identified.
Vanderpool argues that the doctrine of res ipsa loquitur should apply in this matter “to shift the evidential burden” to the hospital. The doctrine 114of res ipsa loquitur permits a plaintiff to meet the burden of proof by using circumstantial evidence when the injury is the kind which ordinarily does not occur in the absence of negligence, when the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or a third person, and when the defendant’s negligence falls within the scope of his duty to the plaintiff. Cangelo-si v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989) (on rehearing). However, res ipsa loquitur does not apply where direct evidence, such as eyewitness testimony of how the accident happened, is available. Linnear v. CenterPoint Energy Entex/Reliant Energy, 2006-3030 (La.9/5/07), 966 So.2d 36.
Here, direct evidence is available through Vanderpool’s account of the incident. When deposed, she stated that the right arm failed to support Cavet’s weight and “gave way” when she stood up. Van-derpool stated that neither she nor her two sisters, who came to the hospital that morning after the incident, touched or inspected the commode chair to determine whether it was broken.[5] At most, Vander-pool’s version of events indicates that the drop arm dropped down when Cavet put her weight on it to stand. This is not the type of incident that could have only occurred through some defect in the commode chair or negligence on the part of the hospital. Rather, it is | iaplausible that Cavet herself may have inadvertently released the arm causing it to drop down when she put her weight on it. For these reasons, res ipsa loquitur is not applicable, and summary judgment in favor of the hospital is proper as to Vanderpool’s claims under La. C.C. art. 2317.1.
Finally, summary judgment is appropriate because the hospital has demonstrated that Vanderpool would be unable to meet the burden of proving that the incident even occurred. Vanderpool is the only eyewitness to the alleged incident. Though she alleges that she sustained serious long-term injuries, she did not seek medical treatment until after filing this suit almost a year after the incident. The incident is not documented in Cavet’s medical records, whereas the initial incident where she fell from her bed is document *1131 ed. The hospital introduced affidavits from nursing staff and a physical therapist who were involved in Cavet’s care and who have no knowledge of Cavet falling from a commode chair. Nurses Baldwin, Dalton, and Johnson all attest that such an event would be documented in the patient’s chart. The only evidence that the incident occurred is Vanderpool’s allegations and self-serving deposition testimony. The plaintiff may not satisfy her burden on summary judgment by relying on her allegations and uncorroborated, self-serving testimony in response to the defendant’s properly made and supported motion for summary judgment. See Posey v. NOMAC Drilling Corp., 44,428 (La.App.2d Cir.8/12/09), 16 So.3d 1211; Laizer v. Kosarek, 2009-0277 (La.App.4th Cir.6/24/09), 16 So.3d 442; Sims-Gale v. Cox Communications of New Orleans, 2004-0952 (La.App.4th Cir.4/20/05), 905 So.2d 311.
|1fiHaving closely reviewed this 16-vol-ume record, we find that there is no genuine issue as to material fact for trial and that the hospital is entitled to summary judgment as a matter of law dismissing all Vanderpool’s claims against it concerning its liability to her for the commode chair incident.
CONCLUSION
For the reasons explained in this opinion, we affirm the judgment of the trial court. Costs are assessed against Vander-pool in accordance with La. C.C.P. arts. 5186 and 5188.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, DREW, MOORE and SEXTON, JJ.
Rehearing denied.

. Vanderpool later named as defendants the hospital’s parent company, LHC, Inc., and LHC’s C.E.O., Keith Myers; alleged manufacturers of the commode chair GF Health Products, Inc., Graham-Field Health Products, L.L.C., and Beatrice Scherer; and alleged suppliers of the chair PSS World Medical, Inc., Gulf South Medical Supply, and David Smith. All claims against these defendants have been dismissed and are not at issue in this appeal.

. Though Vanderpool initially filed suit on behalf of herself and her mother, Cavet was subsequently removed as a plaintiff. The minutes of October 7, 2008, indicate that Van-derpool informed the trial court that Cavet did not want to pursue the matter. The record suggests that Cavet may have pursued some other action against the hospital. Prior to her death in December 2008, Cavet con-fected a settlement and release with the hospital, which is the subject of additional claims asserted by Vanderpool in this litigation but not at issue on appeal.

.A comprehensive listing of Vanderpool’s claims against the hospital is found in "Amended Complaint V” filed on June 18, 2009, which sets forth 20 "counts” against the hospital. The trial court’s order granting leave for her to file Amended Complaint V indicates that she agreed that she would not seek to further amend her complaint. This agreement was reached in response of a rule to show cause filed by the hospital seeking to "freeze” the pleadings. The hospital's complaint was that Vanderpool was adding new allegations on a "seemingly regular basis.”

. A hospital must exercise the requisite degree of care toward a patient as his or her condition requires. Its duty is to protect a patient from danger that may result from his or her physical and mental incapacities and from external circumstances peculiarly within the hospital’s control. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974).

. In reviewing this record, we noted that Van-derpool's sister, Carolyn Jean Nolan, stated in her deposition that she examined the chair and determined that the arm was not snapping into place when raised up. However, her affidavit does not mention that she physically examined the commode chair. Vander-pool's other sister, Sandra Lee Cavet-Waldo, stated in her deposition that an aide checked the chair and said it was broken. Vanderpool stated in her deposition that no one touched the commode chair after the incident. In any event, neither party introduced Nolan’s deposition or affidavit at the hearing on summary judgment.