SEXTON, J. (Ad Hoc).
| iThis suit arises out of an injury allegedly suffered by an attendee of the “Parade of Homes” tour when she tripped and fell while touring a newly constructed house. The trial court granted a motion for summary judgment in favor of the Home Builders Association of Northwest Louisiana (“HBA”), a sponsor of the Parade of Homes, and its insurer. In conjunction with this ruling, the trial court also granted a motion to strike exhibits filed by the plaintiffs in opposition to the motion for summary judgement. The plaintiffs appeal. We reverse the motion to strike in part, reverse the granting of summary judgment, and remand the case to the trial court for further proceedings.
FACTS
In June 2008, a house located at 205 Oak Alley Boulevard in Bossier City was featured in the annual Parade of Homes tour, a collection of “open houses” showcasing newly constructed houses sponsored and promoted by the HBA. Tammy Todd and her husband, Teer Michael Todd, toured the house on June 7, 2008. After viewing a room over the garage, Mrs. Todd allegedly fell at the bottom of a flight of stairs leading back to the garage and sustained injuries to both feet.
On June 4, 2009, the Todds filed suit against several parties, including Robert Angel, the builder who constructed the house, and his company (hereinafter referred to collectively as “the builder”), as well as their insurer. They also sued the HBA and its insurer, Ohio Casualty Insurance Company. The plaintiffs alleged that the threshold where Mrs. Todd fell was unfinished and that this condition caused her either to catch Lher foot or lose her balance. They further alleged that the builder and the HBA were negligent in allowing her access to an unfinished and unsafe area of the house, failing to warn of the unsafe area, and failing to properly supervise the open house.
The HBA and its insurer filed an answer, affirmative defenses and third-party demand. They asserted that, pursuant to the 2008 Parade of Homes participation agreement, the HBA was entitled to be protected, indemnified and held harmless against any loss, claim or damage sustained as the result of personal injury caused by any defect or dangerous condition in the Parade house or site. They further contended that the accident was the sole or partial fault of third parties for *515 whom the HBA was not responsible and that the plaintiffs’ recovery should be reduced in proportion to the degree of fault attributable to those third parties. Alternatively, they pled the plaintiffs’ comparative fault. In its third-party demand, the HBA and its insurer sued their codefen-dants, the builder and its insurer, under the Parade of Homes participation agreement whereby the HBA was to be protected, indemnified and held harmless for personal injuries caused by any defect or dangerous condition in the Parade house or site.
In their answer to the third-party demand, the builder and its insurer generally denied the allegations and stated that the agreement and policy involved were the best evidence of their contents. They also alleged that the accident was caused solely or partially by the negligence of the plaintiffs or other parties with whom they had no relationship.
| sIn July 2011, the HBA and its insurer filed a peremptory exception of no cause of action. They contended that the plaintiffs failed to state a claim against the HBA under La. C.C. art. 2317.1. The plaintiffs countered by maintaining that they had alleged sufficient facts in a “straight forward Article 2315 action with a duty-risk analysis.” In October 2011, the trial court sustained the exception and dismissed the claims against the HBA without prejudice and gave the plaintiffs 15 days to replead their claims against the HBA.
On November 7, 2011, the plaintiffs filed an amended and supplemental petition. They alleged that the HBA entered into a participation agreement with the builder of each house included in the Parade of Homes tour. The following allegations were included in this petition:
5.
Certain “Terms and Conditions” are made part of the Participation Agreement signed by each builder and the Home Builders Association. These include but are not limited to the following:
a. The builders agree to have the home completed and ready for inspection by the Home Builders Association Committee one week before the tour is scheduled to begin.
b. The Home Builder’s [sic] Association has the right to exclude any home deemed incomplete and builder will insure that the house will not be open to the public for any reason during the Parade hours.
c. The builder will receive “Official Parade House” signs after inspection and acceptance of the house by the Home Builders Association. Builder will also place those signs and additional directional signs leading to the site as required by the HBA.
_Ll- • • •
f. The builder agrees to support the admission charge of $5.00 and will either provide a greeter of his own choosing, or pay an additional $125.00 each weekend to have the HBA provide a greeter.
[[Image here]]
7.
The builder agrees to furnish the HBA with a copy of the final inspection certificate issued by the appropriate inspection agency at least a week prior to the Parade.
The petition further alleged that the HBA had control over each of the houses included in the tour during the two weekends of the Parade of Homes and that in its advertising, the HBA advised invitees that it had inspected each house and found that it met HBA standards. They alleged that the HBA, as a sponsor of the Parade of Homes, had a duty to protect invitees *516 from any unreasonable risk of harm that could arise from a defective condition which was or should have been known by the HBA. They further asserted that the HBA had a duty to inspect the premises where Mrs. Todd was injured, and that it should have found the unfinished room above the garage unsuitable for showing and locked the door to protect invitees from potential harm from the unfinished stairway.
In its answer to the amended and supplemental petition, the HBA and its insurer reiterated all defenses and affirmative defenses previously pled. They admitted that the builders complete a participation agreement in connection with their participation in the Parade of Homes. As to paragraphs five and seven, they denied the allegations except to admit that |fithe “Terms and Conditions” of the participation agreement were the best evidence of their contents.
On March 8, 2012, the HBA and its insurer filed a motion for summary judgment. They argued that since the HBA neither (1) created the alleged dangerous condition nor (2) owned, leased, possessed or otherwise maintained custody or control of the premises where Mrs. Todd was injured, the premises liability claims against it must be dismissed with prejudice. Also, they asserted that the general negligence claim against them must likewise be dismissed. They cited Clark-Taylor v. City of New Orleans, 2004-0511 (La.App. 4th Cir.12/1/04), 891 So.2d 22, wherein summary judgment was granted in favor of an organization that conducted a walking tour in New Orleans in a suit brought by a person who fell on the tour after stepping in an uncovered meter box.
In support of the motion, the HBA and its insurer submitted excerpts from Mrs. Todd’s deposition; she said that she and her husband stopped to tour the house after seeing an open house sign. She did not recall talking to anyone who appeared to be hosting or sponsoring the event. She also said that she and her husband did not purchase tickets to tour the house. After ascending to view what turned out to be an unfinished room over the garage, Mrs. Todd said she descended the stairs leading down to the garage and fell at the bottom step.
Also submitted in support of the motion for summary judgment was an affidavit from Dixey Robertson, the HBA’s executive officer. According to Ms. Robertson, the individual contractors who participate in the Parade | fiof Homes are responsible for constructing high-quality homes and supervising their individual open houses. She stated that the contractor maintains sole custody of his house during the Parade of Homes and that no employee of the HBA is on site at the houses during the Parade of Homes. Among the HBA’s responsibilities, she asserted, were inviting the participation of local builders, advertising, creating guidebooks, and sending door greeters (employed by Jean Simpson) to sell the admission tickets. One of the requirements for a house to be included on the tour is that it must be ready for occupancy and showing prior to the date of the Parade of Homes. As to inspection, Ms. Robertson stated:
10. If the proposed house has already passed a city inspection, the HBA deems the house ready for occupancy and showing. In doing so, the HBA relies upon the conclusion of the appropriate city inspection official that the proposed house is complete and safe for occupancy, as well as the expertise of the individual contractor who built the home.
[[Image here]]
14. Because the Robert Angel home had passed all of the required inspections (electrical, plumbing, mechanical, *517 and final home) prior to the 2008 Parade of Homes, the HBA deemed the home to be ready for occupancy and showing.
Finally, to prove that it did not construct, own, lease, possess, or otherwise maintain custody or control the house in question, the movants attached the requests for admission to the builder. Because the builder failed to respond to these requests for admission, they argued that all 17matters are admitted under La. C.C.P. art. 1467.[1] The motion was set for argument on April 16, 2012.
On April 13, 2012, the Todds filed an opposition to the motion for summary judgment. They stated that this was not a premises liability case. Instead they argued that it is a “straight forward tort action” based on La. C.C. art. 2315 and a duty/risk analysis. They cited Pamplin v. Bossier Parish Cmty. Coll., 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, writ denied, 2004-2310 (La.1/14/05), 889 So.2d 266, and Birdsong v. Hirsch Mem’l Coliseum, 42,316 (La.App.2d Cir.8/22/07), 963 So.2d 1095, for the apparent proposition that a duty is owed under La. C.C. art. 2315 to protect invitees/patrons from an unreasonable harm arising from a defective condition. Accordingly, the Todds asserted that the HBA should have inspected the house, discovered the unfinished landing in the garage area, and locked the door leading to the unfinished stairwell.[2]
In support of their opposition, the Todds submitted an affidavit from Mr. Todd in which he recounted his version of the accident. Among other things, he stated that a woman standing by the front door identified herself as a hostess for the Parade of Homes. The Todds also attached eight exhibits which they contended created a duty on the HBA’s part. These included the Parade of Homes guidebooks for 2007, 2008, 2009 and 2011, |Rand excerpts from the guidebooks. Additionally, they provided the 2008 Parade of Homes participation agreement. The terms and conditions page for this agreement contained 14 numbered paragraphs, each of which was initialed by the builder. Of particular relevance are the following paragraphs:
2) I agree to protect, indemnify and hold harmless the HBA, the Committee, the officers, directors, agents and employees from and against any loss, claim or damages sustained by said parties as a result of personal injury cause [sic] to any person by any defect or dangerous condition in the Parade house or site.
[[Image here]]
4) My parade home must be completed and ready for inspection by 5 p.m., May 22, 2008. The Committee reserves the right to exclude my home from the Parade and I understand that no refunds will be issued. No Exceptions.
5) If my house is inspected and deemed incomplete I will ensure that this house will not be open to the public for any reason during Parade hours. FAILURE TO COMPLY COULD RESULT IN THE SUSPENSION OF MY HBA MEMBERSHIP AND/OR JEOPARD *518 IZE THE ELIGIBILITY OF ANY FUTURE PARADE OF HOMES ENTRIES.
6) I agree to furnish the HBA with a copy of final inspection certificates issued by the appropriate inspection agency no later than 5 p.m., May 22, 2008.
[[Image here]]
13) I agree to support the admission charge of $5.00. I will provide my own door greeter or contract with the HBA to provide a greeter for an additional fee of $125 each weekend.
The plaintiffs stated that these exhibits were provided by the HBA in discovery.
The HBA and its insurer filed a motion to strike all of the Todds’ exhibits except Mr. Todd’s affidavit. They argued that these items were not 19competent evidence for summary judgment because they were not sworn, verified or attached to an affidavit.
The motions were argued on April 16, 2012. The trial court granted the motion to strike the eight exhibits attached to the opposition to the motion for summary judgment. Due to the tardiness of filing the opposition, the trial court denied the plaintiffs’ counsel the opportunity to present oral arguments. After hearing argument by the movants, the trial court granted the motion for summary judgment. In so ruling, the court stated that it was questionable whether the HBA owed a duty but, assuming that it did, there was no showing of a breach of that duty.
On May 7, 2012, the trial court signed a judgment granting the motion for summary judgment and dismissing the plaintiffs’ claims against the HBA and its insurer with prejudice.
The plaintiffs appealed.
MOTION TO STRIKE
Law
Summary judgment evidence includes the pleadings, depositions, answers to interrogatories, and affidavits. La. C.C.P. art. 966(B). Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached to the affidavit or served with it. La. C.C.P. art. 967(A).
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact. La. C.C. art. 1853.
|inThe well-settled jurisprudence establishes that an admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. A judicial confession has the effect of waiving evidence as to the subject of the admission. C.T. Traina, Inc. v. Sunshine Plaza, Inc., 2003-1003 (La.12/3/03), 861 So.2d 156. A declaration made by a party’s attorney or mandatary has the same effect as one made by the party himself. La. C.C. art. 1853, comment (b).
Discussion
In its answer to the Todds’ original petition and in its third-party demand, the HBA admitted that it entered into a participation agreement with the builder. Paragraphs five and seven of the Todds’ amended and supplemental petition paraphrased the relevant terms and conditions contained in that participation agreement. In its answer to the amended and supplemental petition, the HBA denied the allegations except to admit that the “Terms and Conditions” of the participation agreement were the best evidence of their contents. This “Terms and Conditions” page of the participation agreement was at *519 tached to the Todds’ opposition to the HBA’s motion for summary judgment. Counsel for the Todds stated in the opposition that the document was obtained from the HBA in discovery.
We believe that the HBA’s statements in its pleadings that it was a party to the participation agreement and that the “Terms and Conditions” page of the agreement itself was the best evidence of its contents amounts to a judicial admission of this document, which it provided to the Todds in discovery. Therefore, insofar as it struck the “Terms and Conditions” page | uas an exhibit, the trial court abused its discretion. This document may be considered in addressing the HBA’s motion for summary judgment.[3]
SUMMARY JUDGMENT
Law
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, supra; Loftus v. Kuyper, 46,961 (La.App.2d Cir.3/14/12), 87 So.3d 963.
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential | ^elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, 2006-1181 (La.3/9/07), 951 So.2d 1058. At that point, the party who bears the burden of persuasion at trial, usually the plaintiff, must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial. Samaha v. Rau, supra; Wright v. Louisiana Power & Light, supra; Loftus v. Kuyper, supra.
*520 A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially ensure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Duckett v. Grumbling State Univ., 47,082 (La.App.2d Cir.4/18/12), 92 So.3d 478, writ denied, 2012-1130 (La.9/14/12), 99 So.3d 32.
Although the summary judgment procedure is favored and must be construed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law, factual inferences reasonably drawn from the evidence nevertheless must be construed in favor of the party [ ^opposing the motion, and all doubt must be resolved in favor of the opponent to summary judgment. Ricks v. City of Monroe, 44,811 (La.App.2d Cir.12/9/09), 26 So.3d 858, writ denied, 2010-0391 (La.5/28/10), 36 So.3d 247.
A tort remedy is broadly available under La. C.C. art. 2315(A) (“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”). Christy v. McCalla, 2011-0366 (La.12/6/11), 79 So.3d 293.
Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) actual damages. Christy v. McCalla, supra.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Ponceti v. First Lake Properties, Inc., 2011-2711 (La.7/2/12), 93 So.3d 1251. Whether a duty is owed is a question of law. Ponceti v. First Lake Properties, Inc., supra. We ask whether there is any law-whether statutory, jurisprudential, or arising from general principles of fault-to support the plaintiffs claim. Cavet v. Louisiana Extended Care Hosp., 47,141 (La.App.2d Cir.5/16/12), 92 So.3d 1122. Deciding 114whether to impose a duty requires the court to make a policy decision in light of the unique facts and circumstances of each case. Cavet v. Louisiana Extended Care Hosp., supra.
Whether the defendant breached that duty is a question of fact. Mixon v. Daris, 31,725 (La.App.2d Cir.3/31/99), 732 So.2d 628.
Discussion
In ruling on the HBA’s motion for summary judgment, the trial court stated that it was questionable whether the HBA even owed a duty to an invitee like Mrs. Todd. However, assuming arguendo that it did have such a duty, the trial court concluded that there was no showing made that the HBA breached that duty. To the contrary, the trial court indicated that the HBA took steps to avoid any unreasonable risk of harm by relying upon the inspections of the houses conducted by city officials.
In Pamplin v. Bossier Parish Cmty. Coll., supra, a student at Bossier Parish Community College (“BPCC”) was injured when she slipped on a metal plate covering a drain area between the concrete portions of a campus sidewalk. Suit was filed against BPCC; the Board of Supervisors of Community and Technical Colleges (hereinafter “the State”) answered on behalf of BPCC. The State’s answer stated *521 that the BPCC campus was leased from the Bossier Parish School Board. In determining whether the State owed a duty to the plaintiff student, this court conducted a duty-risk analysis under La. C.C. art. 2315. It considered two important relationships. First, regardless of whether the State had actual garde of the sidewalk (a prerequisite for liability under La. C.C. art. 2317.1), it clearly had [ -^possession and use of the sidewalks for more than two years before the plaintiffs accident. Second, the State had a relationship with its students who were invited to use its campus and the sidewalk access to its facilities. This court found that under these circumstances, the State owed a duty to its students under La. C.C. art. 2315 which was comparable to the duty of a custodian under La. C.C. art. 2317.1. That duty required it to act to protect its students from any unreasonable risk of harm that could arise from a defective condition on the campus that was known to the State.
In Birdsong v. Hirsch Mem’l Coliseum, supra, an ice show attendee was injured when she slipped on a wet floor at the coliseum where the show was held. Suit was filed against the coliseum and the promoter of the show. The promoter filed a cross-claim against the coliseum based upon the contents of the lease between them which obliged the coliseum to clean the premises during and prior to each performance. The trial court sustained the promoter’s peremptory exception of no cause of action. This court reversed, finding that the attendee’s allegations stated a cause of action against the promoter. Citing the Pamplin case, we found that the inquiry into the promoter’s responsibility for the attendee’s accident did not end upon a finding of retained garde in the lessor/coliseum because of the promoter’s “duty of care owed to its patrons which must be further considered under the La. C.C. art. 2315 and our general law of negligence.” We further stated:
[The promoter’s] duty was to act to protect its patrons from any unreasonable risk of harm, such as the alleged condensation problem, that was caused by a defective condition in the building known to [the promoter]. The party with garde may be liable for its connection to the defect because of its ownership and possession. Regardless of that garde, [the promoter] may be liable for its knowledge of the defective 11ficondition of the premises with its solicitation of patrons to the allegedly defective setting.
In the instant case, there is no lease to which the HBA was a party. Nor did the HBA have possession or garde of the house-. However, it was a sponsor who organized and advertised an event whereby it enticed invitees to view newly constructed houses for a fee. In her affidavit, Ms. Robertson, the executive officer of the HBA, stated that it was responsible for “(1) inviting local builders to participate; (2) selling [ads] in and creating the Guidebook; (3) advertising the Parade of Homes in the local media; (4) printing and distributing directional signs; and (5) sending door greeters (employed by Jean Simpson) to sell the $5 admission tickets.” Thus, it may be said that the HBA was a sponsor soliciting patrons to a potentially defective setting. As such, it had a duty to exercise reasonable care for the safety of its patrons.
We distinguish Clark-Taylor v. City of New Orleans, supra, wherein summary judgment was granted in favor of a tour organizer, from the instant case. There, a person on a walking tour in New Orleans was injured when she stepped in an uncovered meter box on a public sidewalk. The persons participating in the outing set up by the tour organizer were in no greater peril from this obvious condition than the *522 rest of the walking public traversing that particular public sidewalk. Here, Mrs. Todd, an invitee to the Parade of Homes tour, was allegedly injured as the result of a defect in the very thing the HBA solicited her to view.
We find that the HBA had a legal duty under La. C.C. art. 2815 to take reasonable precautions to safeguard invitees who attended its Parade of 117Homes event. Whether the HBA breached that duty is a question of fact. We conclude that there is a disputed issue of material fact on this subject which is sufficient to defeat summary judgment. Paragraph four of the “Terms and Conditions” page of the participation agreement provides a right of inspection and exclusion to the Parade of Homes Committee. This appears to be separate from the city inspections mentioned in paragraph six. The affidavit of the HBA representative states that the house at issue passed its city inspections. There is no indication that the house passed the Committee’s inspection to determine whether the house was “completed.”
Since the condition of the house and its suitability to be included in the Parade of Homes is a material fact in the instant suit, we find that summary judgment is not appropriate upon the showing made.
CONCLUSION
We reverse the motion to strike as to the “Terms and Conditions” page of the participation agreement. The ruling of the trial court granting summary judgment in favor of the HBA and its insurer is reversed. The matter is remanded to the trial court for further proceedings.
Costs of this appeal are assessed to the Home Builders Association of Northwest Louisiana and Ohio Casualty Insurance Company.
REVERSED AND REMANDED.

. The requests for admission include admitting that the house had passed all of its final city (electrical, plumbing, mechanical, building) inspections; that the house was completed more than seven months before the 2008 Parade of Homes; that an employee of the builder prepared the house for inclusion in the Parade of Homes and was present at the open house; that the builder himself was present at the house on the date of injury; and that the builder considered that he and his company had sole care, custody, control and possession of the house.

. In their answer to the amended and supplemental petition, the builder and its insurer specifically denied that the house had any unfinished room or stairway or any room that was "unsuitable for showing.”

. See and compare dicta pertaining to consideration on a motion for summary judgment of a recorded statement provided in discovery in Harris v. Dunn, 45,619 (La.App.2d Cir.9/22/10), 48 So.3d 367.